UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2026 MAR 23  PM 12: 45

U.S. DISTRICT COURT
DISTRICT OF MASS.

BRADLEY LAURENT,
    Plaintiff, Pro Se,

v.

CARVANA, LLC, and ADESA, INC.,
    Defendants.

Civil Action No. _____

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I. INTRODUCTION**

1.    Plaintiff Bradley Laurent is a Black man of Haitian origin who worked for Defendants at 63 Western Avenue, Framingham, Massachusetts. Plaintiff brings this action for race discrimination, national-origin discrimination, hostile work environment, retaliation, defamation per se, negligent supervision, and wage-related violations arising from false theft accusations, police escalation without evidence, persistent workplace rumor-spreading, intimidation, and termination. The documentary record shows that Defendants were repeatedly placed on notice, yet the mistreatment continued intentionally rather than by accident or misunderstanding. (See Exs. A, B, D, E, F, H, I.)

2.    This case arises from a false accusation that Plaintiff stole vehicles while he was actively performing his duties in the detail shop. Management escalated that accusation to police despite the absence of evidence, and police never questioned, charged, or accused Plaintiff of wrongdoing. (See Exs. B, F, I.)

3.    After the accusation, Plaintiff was removed from work and later rehired, but management and coworkers continued treating him with suspicion, allowed theft rumors to persist, and failed to clear his name despite repeated complaints to management, including Scott, Jake Clark, and Ronald Benoit. (See Exs. B, D, E, F, I.)

4.    Plaintiff then experienced escalating retaliation, including being sent home during a complaint discussion on March 9, 2026, and a formal termination effective March 11, 2026. (See Exs. C, D, F.)

5.    Plaintiff further asserts that his dignity, reputation, and personal integrity are invaluable and cannot be measured in monetary terms. The United States Supreme Court has

recognized that harm to reputation and standing in the community constitutes a serious and legally cognizable injury. See Wisconsin v. Constantineau (holding that where a person's "good name, reputation, honor, or integrity is at stake," due process protections apply). Defendants' conduct—falsely accusing Plaintiff of criminal theft, allowing such accusations to circulate, and failing to correct the record—constitutes a direct assault on Plaintiff's dignity and reputation, which have no price and cannot be fully compensated by money alone. (See Exs. B, E, F, I.)

## II. JURISDICTION AND VENUE

6. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

7. This Court has supplemental jurisdiction over Plaintiff's related Massachusetts-law claims under 28 U.S.C. § 1367.

8. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in Framingham, Massachusetts, within this District. (See Exs. B, C, F.)

## III. PARTIES

9. Plaintiff Bradley Laurent resides in Framingham, Massachusetts.

10. Defendant Carvana, LLC did business in Massachusetts and employed Plaintiff at the Framingham facility. (See Exs. B, C, F.)

11. Defendant ADESA, Inc. did business in Massachusetts and operated, controlled, or jointly employed Plaintiff at the same Framingham facility. The EEOC documents identify "ADESA Boston / Carvana" and the Framingham worksite. (See Exs. A, B.)

## IV. ADMINISTRATIVE EXHAUSTION

12. Plaintiff filed a Charge of Discrimination concerning Defendants with the EEOC under Charge No. 523-2026-02069. (See Ex. B.)

13. On March 10, 2026, the EEOC issued Plaintiff a Notice of Right to Sue and terminated processing of the charge. (See Exs. A, G.)

14. Plaintiff files this action within the required period. (See Exs. A, G.)

## V. FACTUAL ALLEGATIONS

15. Plaintiff is a Black employee of Haitian origin. (See Exs. B, F, I.)

16. On or about January 10, 2026, while Plaintiff was actively cleaning vehicles in the detail shop, a female Customer Advocate falsely accused him of stealing vehicles. (See Exs. B, F, I.)

17. Management escalated that accusation by contacting police. (See Exs. B, F, I.)

18. Police never questioned Plaintiff, never charged him, and never accused him of any wrongdoing. Plaintiff is informed and believes there was no evidence that he had stolen any vehicle. (See Exs. B, F, I.)

19.    Following that accusation, Plaintiff was removed from work and his access to company property was blocked. He was later rehired after it became clear there was no evidence supporting the accusation. (See Ex. F.)

20.    Even after Plaintiff's return, the mistreatment continued. Management and coworkers continued treating him with suspicion and continued spreading the false accusation that he had stolen vehicles. (See Exs. B, E, F, I.)

21.    A coworker named Christian asked employees where Plaintiff was and appeared to be searching for him as if Plaintiff had taken a vehicle. This caused humiliation and reputational harm in the workplace. (See Exs. E, F, I.)

22.    From January through March 2026, Plaintiff repeatedly reported the false accusation, rumor-spreading, and mistreatment to management, including Scott, Jake Clark, and Ronald Benoit, and requested that his name be cleared. Despite those reports, no meaningful corrective action was taken. (See Exs. B, D, E, F, I.)

23.    Plaintiff documented the rumors and the harm they caused in texts to Jake Clark, asking that his name be cleared and reporting that Christian had been looking for him. Jake Clark responded that he had not heard anything like that and asked who was saying it, which confirms that management was placed on notice by Plaintiff. (See Ex. E.)

24.    On March 5, 2026, at approximately 8:50 a.m., Plaintiff emailed Ronald Benoit stating that his schedule had been modified that morning without prior notification and that two individuals were monitoring his movements. Plaintiff explained that he had checked the schedule the day before, saw that he was off Friday and Sunday, and relied on that schedule to arrange a mandatory federal court appearance for March 6, 2026. (See Ex. D.)

25.    In the same email, Plaintiff expressly reported that unsubstantiated theft rumors were damaging his reputation and requested that the claims be formally cleared and that the unnecessary monitoring cease. (See Ex. D.)

26.    Plaintiff further reported on March 5 and March 7 that Lucas Paiva and Eric positioned themselves around him in the detail area while he was working on a Jeep, with one standing in front of him and the other behind him, causing Plaintiff to feel watched, blocked, and treated as a suspect. (See Exs. D, F, I.)

27.    Plaintiff also reported that Lucas Paiva lacked a badge, had only just started, and appeared not to know the purpose of the detailing chemicals, raising safety and training concerns. (See Exs. D, I.)

28.    Ronald Benoit responded that schedules are posted three weeks in advance and that no modifications were made to Plaintiff's shifts for the dates in question. This directly contradicted Plaintiff's contemporaneous report that his schedule had been changed on the morning of March 5. (See Ex. D.)

29.    On March 8 and March 9, Plaintiff continued to question why the schedule appeared different, why Lucas and Eric were sent to stand around him, and why he was being treated as though he had done something wrong. (See Ex. D.)

30.    On March 9, 2026, at 10:00 a.m., Plaintiff had a discussion with management regarding the defamation and mistreatment he had reported. Later that morning, Plaintiff emailed

Ronald Benoit and stated that, during that reporting, Scott said there was a "significant gap" between Plaintiff's account and "theirs." (See Ex. D.)

31.    During that March 9 discussion, Ronald Benoit sent Plaintiff home at approximately 10:00 a.m. while they were discussing Plaintiff's complaints. Plaintiff alleges this was intentional retaliation for reporting the misconduct and attempting to clear his name. (See Exs. D, F.)

32.    On March 10, 2026, Plaintiff served a signed pre-suit demand letter and a wage-and-payroll supplement on Defendants' HR and legal channels, demanding preservation of evidence, a written name-clearing statement, and a response within fourteen days. (See Exs. F, H.)

33.    Plaintiff also warned Defendants to preserve surveillance footage, emails, HR records, witness statements, schedules, and payroll/timekeeping records. (See Exs. F, H.)

34.    Plaintiff later reported that he no longer had access to his employer email account and directed future communications to his personal email. (See Ex. H.)

35.    Defendants' Workday system sent Plaintiff an "Employment Separation & Reference Information" email dated March 11, 2026, stating "Business Process: Terminate" and "Terminate for Bradley Laurent effective on 03/11/2026." (See Ex. C.)

36.    The Workday termination notice did not state a reason for the termination. (See Ex. C.)

37.    Plaintiff also raised wage and payroll concerns, including whether he was compensated for hours worked on December 3, 2025. Ronald Benoit stated that he had flagged that date for further investigation to confirm the hours worked. (See Ex. D.)

38.    Plaintiff further raised safety concerns that employees were required to work with chemical detailing products without consistent gloves, face masks, or protective eyewear, and that he personally requested a face mask and did not receive one for several weeks. (See Exs. D, E, F.)

39.    Defendants' conduct was intentional, malicious, and carried out with reckless disregard for Plaintiff's rights, reputation, livelihood, and emotional well-being. Defendants had repeated opportunities to stop the mistreatment, investigate the false accusation, and clear Plaintiff's name, but instead chose to continue the mistreatment and terminate him. (See Exs. B, C, D, E, F, H, I.)

40.    Defendants' conduct was not accidental or negligent, but intentional, reckless, and carried out with willful disregard for Plaintiff's federally protected rights. Under federal law, discriminatory and retaliatory intent may be inferred from circumstantial evidence, including temporal proximity, inconsistent explanations, and failure to investigate serious accusations. See Reeves v. Sanderson Plumbing Products, Inc. Here, Defendants escalated a criminal accusation without evidence, failed to conduct a reasonable investigation, allowed reputational harm to continue, and then terminated Plaintiff shortly after he engaged in protected activity, demonstrating pretext and intentional wrongdoing. (See Exs. C, D, F.)

41.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered reputational harm, humiliation, emotional distress, lost employment, lost wages, and other damages. (See Exs. B, E, F, I.)

## VI. COUNT I – TITLE VII RETALIATION

42. Plaintiff realleges the preceding paragraphs.

43. Plaintiff engaged in protected activity by repeatedly reporting to management that false theft accusations, workplace monitoring, and mistreatment were harming him, and by filing an EEOC charge asserting discrimination and retaliation. (See Exs. B, D, E, F.)

44. Defendants took materially adverse actions against Plaintiff, including removing him from work after the January accusation, sending him home on March 9, 2026, and terminating him effective March 11, 2026. (See Exs. C, D, F.)

45. The close timing between Plaintiff's complaints and the March 9 and March 11 actions supports a causal inference and shows a deliberate retaliation pattern. (See Exs. C, D, F.)

46. Defendants retaliated against Plaintiff in violation of Title VII.

47. Under Title VII, an adverse action includes any action that might dissuade a reasonable worker from making or supporting a charge of discrimination. See Burlington Northern & Santa Fe Railway Co. v. White. Defendants' actions—including removal from work, sending Plaintiff home, reputational harm, and termination—meet and exceed this standard. (See Exs. C, D, F.)

## VII. COUNT II – RACE DISCRIMINATION / RETALIATION UNDER 42 U.S.C. § 1981

48. Plaintiff realleges the preceding paragraphs.

49. Plaintiff is Black. He was subjected to false criminal suspicion, monitoring, humiliation, removal from work, and ultimate termination. (See Exs. B, C, F, I.)

50. Plaintiff alleges that Defendants' actions were motivated, at least in part, by race and were also retaliatory after he complained about the treatment. (See Exs. B, F.)

51. Defendants violated 42 U.S.C. § 1981.

## VIII. COUNT III – MASSACHUSETTS CHAPTER 151B DISCRIMINATION AND RETALIATION

52. Plaintiff realleges the preceding paragraphs.

53. Plaintiff is Black and of Haitian origin. He complained about the false accusation, harassment, and mistreatment and later pursued EEOC relief. (See Exs. B, F, I.)

54. Defendants then removed him from work, sent him home during a complaint discussion, and terminated him. (See Exs. C, D, F.)

55. Defendants are liable under Chapter 151B for discrimination and retaliation.

## IX. COUNT IV – HOSTILE WORK ENVIRONMENT

56. Plaintiff realleges the preceding paragraphs.

57. Plaintiff was falsely accused of vehicle theft, treated as though he were a criminal, subjected to ongoing rumors, asked about and searched for by coworkers, monitored while working, and surrounded in the detail area by two employees in a manner he perceived as blocking and intimidation. (See Exs. B, D, E, F, I.)

58. Plaintiff repeatedly reported this conduct, but Defendants failed to stop it or clear his name. (See Exs. D, E, F.)

59. The conduct was severe and pervasive enough to alter the terms and conditions of Plaintiff's employment and create a hostile and abusive work environment.

60. A hostile work environment exists where workplace conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. See Harris v. Forklift Systems, Inc. The false criminal accusation, persistent rumors, monitoring, and intimidation described herein meet this legal threshold. (See Exs. B, D, E, F, I.)

## X. COUNT V – DEFAMATION PER SE

61. Plaintiff realleges the preceding paragraphs.

62. Defendants, through their employees and agents, published false statements accusing Plaintiff of stealing vehicles. (See Exs. B, E, F, I.)

63. Those statements were published to third parties, including management, coworkers, and police. (See Exs. B, F, I.)

64. The accusation was false. Plaintiff was never questioned or charged by police, and Plaintiff alleges there was no evidence that he stole any vehicle. (See Exs. B, F, I.)

65. The accusation harmed Plaintiff's reputation, caused humiliation, and caused emotional distress in the workplace. (See Exs. E, F, I.)

66. Defendants are liable for defamation per se.

67. Under Massachusetts law, false statements imputing criminal conduct constitute defamation per se, requiring no proof of special damages. See Stone v. Essex County Newspapers, Inc. By accusing Plaintiff of vehicle theft and communicating that accusation to coworkers and law enforcement without evidence, Defendants engaged in defamation per se. (See Exs. B, F, I.)

68. Defendants further acted with at least negligence, and in fact reckless disregard for the truth, by failing to verify the accusation before escalating it to police and allowing it to persist after no evidence was found. (See Exs. B, F.)

## XI. COUNT VI – NEGLIGENT SUPERVISION / RETENTION

69. Plaintiff realleges the preceding paragraphs.

70. Plaintiff repeatedly reported the false accusation, rumor-spreading, monitoring, and mistreatment to Scott, Jake Clark, and Ronald Benoit. (See Exs. D, E, F, I.)

71. Despite notice, Defendants failed to clear Plaintiff's name, failed to stop the continued rumor-spreading and monitoring, and allowed the hostile conditions to continue. (See Exs. D, E, F.)

72. Defendants are liable for negligent supervision and/or retention.

## XII. COUNT VII – MASSACHUSETTS WAGE ACT

73. Plaintiff realleges the preceding paragraphs.

74. Plaintiff raised a specific wage dispute regarding hours worked on December 3, 2025, and management acknowledged that the date had to be investigated to confirm the hours worked. (See Ex. D.)

75. Plaintiff also alleges wage-related harm from being sent home during a scheduled shift and from failures to maintain accurate payroll and timekeeping records. (See Exs. D, H.)

76. To the extent Defendants failed to pay Plaintiff all earned wages, failed to timely pay final wages due upon discharge, or failed to maintain accurate time records, Defendants violated the Massachusetts Wage Act. (See Exs. C, D, H.)

77. The Massachusetts Wage Act imposes strict liability for failure to timely pay earned wages and mandates treble damages for violations. See Reuter v. City of Methuen. Defendants' failure to properly account for and confirm Plaintiff's wages, including hours worked on December 3, 2025, and potential unpaid time due to being sent home, constitutes a violation. (See Ex. D.)

## XIII. COUNT VIII – DECLARATORY / EQUITABLE RELIEF

78. Plaintiff realleges the preceding paragraphs.

79. An actual controversy exists regarding the falsity of the theft accusation and the continuing reputational harm caused by Defendants' failure to correct the record. (See Exs. B, E, F, I.)

80. Plaintiff seeks equitable relief including a written statement clearing his name of any allegation that he stole vehicles and written confirmation that no employment decision was based on false theft accusations. (See Exs. F, H.)

81. Plaintiff further provides notice that Defendants and their counsel are bound by Federal Rule of Civil Procedure 11, which requires that all factual assertions and denials be supported by evidence after a reasonable inquiry. Given the documentary record—including evidence of false criminal accusations, contradictory management statements, and temporal proximity to termination—any attempt to deny or misrepresent these facts without evidentiary support may constitute a violation of Rule 11 and expose Defendants and counsel to sanctions. Plaintiff has preserved substantial evidence and will seek appropriate remedies should Defendants advance unsupported or misleading positions before this Court. (See Exs. B, C, D, E, F, H, I.)

Defendants' conduct represents a systematic failure of accountability, where an employee was falsely accused of a crime, subjected to humiliation, denied protection, and ultimately terminated after seeking to defend his name. The law does not permit employers to destroy an individual's reputation and dignity without consequence. Plaintiff's injuries extend beyond economic loss and include irreparable harm to his name, identity, and standing, which the law recognizes as among the most serious forms of injury. (See Exs. B, C, D, E, F, I.)

## XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award:

A. Compensatory damages, enhanced damages where permitted by law, and all other available relief in the total amount of $366,666,666.66;

B. Back pay, front pay, lost wages, lost benefits, and consequential damages as permitted by law;

C. Treble damages, costs, and any other relief available under the Massachusetts Wage Act, if proven;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Declaratory and equitable relief, including a written statement clearing Plaintiff's name of theft accusations;

F. Reasonable costs and any fees authorized by statute;

G. Such other and further relief as the Court deems just and proper.

## XV. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Bradley Laurent
Plaintiff, Pro Se
16 Gordon St
Framingham, MA 01702
617-906-4666
laurentbradley0@gmail.com
Dated: 03/23/2026